# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## 2023 CA 1319

LE REVE BOCAGE, LLC

VERSUS

HURRICANE WORK, LLC

Judgment Rendered: SEP 2 6 2024

* * * * * *

On Appeal from the Twenty-Third Judicial District Court
In and for the Parish of Ascension
State of Louisiana
Docket No. 136299

Honorable Melvin C. Zeno, Judge Presiding

* * * * * *

Evelyn I. Breithaupt
Edward E. Rundell
Alexandria, Louisiana
-and-
Mark A. Marionneaux
G. Trippe Hawthorne
Jeffrey N. Boudreaux
Katie D. Bell
Forrest E. Guedry
Baton Rouge, Louisiana

Counsel for Plaintiff/Appellee
Le Reve Bocage, LLC

Martin K. Maley, Sr.
Stephen M. Irving
Baton Rouge, Louisiana

Counsel for Defendant/Appellant
Hurricane Work, LLC

* * * * * *

**BEFORE:  McCLENDON, WELCH, AND LANIER, JJ.**

**McCLENDON, J.**

In this case involving a lease agreement, the defendant appeals a judgment of the trial court granting summary judgment in favor of the plaintiff, denying the defendant's motion for summary judgment, and declaring the lease agreement limited to a certain project. For the following reasons, we affirm the trial court's judgment.

### FACTS AND PROCEDURAL HISTORY

Le Reve Bocage, LLC (Bocage) entered into a Lease Agreement with Hurricane Work, LLC (Hurricane) for the purpose of excavating and mining of dirt, soils, and materials (clay and dirt) for use in levee construction and repair from approximately sixty acres of immovable property owned by Bocage located in Ascension Parish, Louisiana. The Lease Agreement became effective on September 28, 2020, and contained a provision that it "shall continue for a period of four (4) years from the Effective Date, or the end of the levee construction for the West Shore Lake Pontchartrain project, whichever is first to occur."[1] Sometime after the effective date of the Lease Agreement, a dispute arose over its interpretation.

On February 10, 2023, Bocage filed a Petition for Declaratory Judgment against Hurricane, seeking a judgment declaring that the Lease Agreement allowed Hurricane to extract and sell the clay and dirt for use in only the West Shore Lake Pontchartrain project. After filing an answer to Bocage's petition, Hurricane filed a motion for summary judgment. Therein, Hurricane asserted that the provisions of the Lease Agreement allowed it to sell clay and dirt for other projects. Shortly thereafter, Bocage filed its own motion for summary judgment, seeking a declaration limiting the sale of clay and dirt to the West Shore Lake Pontchartrain project. Hurricane also moved for leave to file a reconventional demand for damages against Bocage, and on June 5, 2023, was granted leave to file its reconventional demand.

On June 12, 2023, the trial court heard the motions for summary judgment and took the matter under advisement. On July 25, 2023, the trial court issued Reasons for Judgment, and on August 9, 2023, signed its judgment. Said judgment granted Bocage's

---

[1] The West Shore Lake Pontchartrain project was a U.S. Army Corps of Engineers levee project with a tentative schedule from 2020 through 2023.

motion for summary judgment and declared that the Lease Agreement was limited to the mining and sale of clay and dirt from the Bocage property exclusively for sale and use on the West Shore Lake Pontchartrain project and for no other levee projects. The judgment also denied Hurricane's motion for summary judgment; dismissed Hurricane's reconventional demand, stating that the ruling on the declaratory judgment was dispositive of the reconventional demand; and provided that the matter was designated as a final judgment as to all claims.

Hurricane appealed the August 9, 2023 judgment, asserting several assignments of error.[2] Hurricane challenges the trial court's grant of Bocage's motion for summary judgment, the denial of its motion for summary judgment,[3] and the dismissal of its reconventional demand for damages.

## DISCUSSION

A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact.[4] **Cypress Heights Academy v. CHA Investors, LLC**, 2021-0820 (La.App. 1 Cir. 6/7/22), 343 So.3d 736, 741, writs denied, 2022-01284, 2022-01247 (La. 11/8/22), 349 So.3d 574, 576. A motion for summary judgment is properly granted if, after an opportunity for adequate discovery, the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(A)(3).

---

[2] Specifically, Hurricane averred that the trial court erred 1) by finding that the Lease Agreement was ambiguous; 2) in interpreting the Lease Agreement against Hurricane when the evidence showed that both parties edited the Lease Agreement; 3) by finding that Claude Klein was a representative or agent of Hurricane and further relying on disputed extrinsic evidence to grant Bocage's motion for summary judgment; 4) by failing to grant Hurricane's motion for summary judgment; and 5) by dismissing the reconventional demand for damages filed by Hurricane.

[3] As part of its appeal, Hurricane contends that the trial court erred in denying its motion for summary judgment. Although the denial of a motion for summary judgment is an interlocutory judgment and is appealable only when expressly provided by law, where there are cross motions for summary judgment raising the same issues, as in this case, this court can review the denial of a summary judgment in addressing the appeal of the granting of the cross motion for summary judgment. **Allen v. Southwest Builders, L.L.C.**, 2022-1344 (La.App. 1 Cir. 8/24/23), 372 So.3d 32, 34 n.1.

[4] Although the Legislature recently amended LSA-C.C.P. art. 966, which governs summary judgments, the relevant amendment is not applicable to the instant appeal. See 2023 La. Acts No. 317, § 1 (eff. Aug. 1, 2023) and 2023 La. Acts No. 368, § 1 (eff. Aug. 1, 2023); **Ricketson v. McKenzie**, 2023-0314 (La.App. 1 Cir. 10/4/23), 380 So.3d 1, 8-11 (concluding 2023 La. Acts No. 317, § 1 was a substantive amendment and could not be retroactively applied). Accordingly, we apply the version of LSA-C.C.P. art. 966 in effect on June 12, 2023, the date of the summary judgment hearing herein. See **McDonald v. D'Amico**, 2023-0884 (La.App. 1 Cir. 3/22/24), 385 So.3d 1162, 1166 n.6, writ denied, 2024-00444 (La. 6/19/24), 386 So.3d 674.

A party may seek declaratory judgment through the summary judgment procedure. **Cypress Heights Academy**, 343 So.3d at 742. The decision to grant or deny declaratory relief is left to the wide discretion of the trial court. Although this decision is subject to an abuse of discretion standard of review, the judgment itself is still reviewed under the appropriate standard of review. **Sebble on Behalf of Estate of Brown v. St. Luke's #2, LLC**, 2023-00483 (La. 10/20/23), 379 So.3d 615, 618. In determining whether summary judgment is appropriate, appellate courts review evidence *de novo* under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. **Id**.

The proper interpretation of a contract is a question of law subject to *de novo* review on appeal. When considering legal issues, the reviewing court accords no special weight to the trial court, but conducts a *de novo* review of questions of law and renders judgment on the record. **Louisiana Machinery Co., LLC v. Bihm Equipment Co.**, 2019-1081 (La.App. 1 Cir. 8/10/21), 329 So.3d 317, 321. Thus, we use the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. **Clovelly Oil Co., LLC v. Midstates Petroleum Co., LLC**, 2012-2055 (La. 3/19/13), 112 So.3d 187, 192.

Contracts have the effect of law for the parties and the interpretation of a contract is the determination of the common intent of the parties. LSA-C.C. arts. 1983 and 2045. The reasonable intention of the parties to a contract is to be sought by examining the words of the contract itself, and not assumed. **Clovelly Oil Co., LLC**, 112 So.3d at 192.

When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. LSA-C.C. art. 2046. Common intent is determined, therefore, in accordance with the general, ordinary, plain and popular meaning of the words used in the contract. **Clovelly Oil Co., LLC**, 112 So.3d at 192. Accordingly, when a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit, as it is not the duty of the courts to bend the meaning of the words of a contract into harmony with a supposed reasonable intention of the parties. **Id.**

4

Nevertheless, as a general rule, a contract is ambiguous if, after applying the established rules of contract interpretation, the contract is uncertain as to the parties' intent and susceptible to more than one reasonable interpretation under the circumstances. **St. Romain v. Delta Southern Co., Inc.**, 2022-0111 (La.App. 1 Cir. 9/22/22, 353 So.3d 778, 784, <u>writ denied</u>, 2022-01569 (La. 4/25/23), 359 So.3d 980. If a court determines as a matter of law that a contract is ambiguous, then extrinsic evidence may be used to determine the true intent of the parties, and determining the intent of the parties becomes, in part, a question of fact inappropriate for summary judgment unless there is "no genuine issue as to material fact." **SRG Baton Rouge II, L.L.C. v. Patten/Jenkins BR Popeye's, L.L.C.**, 2023-1204 (La.App. 1 Cir. 5/31/24), ___ So.3d ___, ___ (2024 WL 2795052, *6); LSA-C.C.P. art. 966(A)(3).

In its appeal, Hurricane argues that the trial court erred in failing to find that the Lease Agreement was unambiguous, thereby limiting the interpretation of the agreement to its four corners without the consideration of extrinsic evidence, as the clear and concise language of the Lease Agreement established that the sale of the clay was not limited to the West Shore Lake Pontchartrain project. To the contrary, Bocage maintains that the trial court correctly determined that the Lease Agreement was ambiguous subject to varying and conflicting interpretations. Therefore, Bocage asserts, the trial court correctly looked beyond the four corners of the Lease Agreement to determine the common intent of the parties.

In support of its motion for summary judgment, Bocage attached the Lease Agreement; the affidavit of Marion M. Rundell, individually and as manager of Bocage, with the Lease Agreement attached; and the U.S. Army Corps of Engineers St. John the Baptist Parish Contractor Industry Day, West Shore Lake Pontchartrain publication of September 18, 2019.[5] In opposition to Bocage's motion for summary judgment, Hurricane submitted the affidavit of Jack Singleton, the owner and manager of Hurricane. Thirty-five exhibits were attached to Mr. Singleton's affidavit, including the Lease Agreement.

---

[5] We note that Hurricane did not object to the evidence offered by Bocage in support of its motion for summary judgment.

5

Thus, as a threshold question, we must determine whether the Lease Agreement is clear or whether it is ambiguous. In this regard, we note that Paragraph 2, which sets forth the Term of Agreement, provides, in full:

> The Agreement period begins on the Effective date of this Agreement and shall continue for a period of four (4) years from the Effective Date, or the end of the levee construction for the West Shore Lake Pontchartrain project, whichever is first to occur. Notwithstanding the foregoing, this Agreement shall immediately terminate, with Landlord and Tenant owing no other duties to each other, if the dirt, soils, and materials on the Property are non-certifiable, for purposes of levee construction, according to the requirements and standards of the United States Army Corps of Engineers, or if Tenant is not able to obtain necessary permits, licenses and contracts to supply dirt, soils, and materials from the Property for the purpose of levee construction.

Hurricane points out that the only mention in the Lease Agreement of the West Shore Lake Pontchartrain project is in this paragraph, which it argues does not prevent the sale of the dirt and clay to other projects. Hurricane also refers to other provisions of the Lease Agreement, which, according to Hurricane, do not limit the sale of the dirt and clay, but rather, indicate that sales to other parties were clearly allowed. For example, in Paragraph 1, Description of the Property, the Lease Agreement provides, in pertinent part that "Landlord leases to Tenant, for the purpose of excavating, mining, processing, and stockpiling dirt, soils, and materials for use in levee construction and repair that certain real property consisting of approximately 60 acres, more or less, located in Ascension [Parish], Louisiana." Hurricane maintains that this language does not limit the use of the dirt and clay to levee construction, but rather includes repair, which would be inconsistent with limiting the clay for construction of the West Shore Lake Pontchartrain project.

Hurricane also refers to Paragraph 10, Production Efforts, of the Lease Agreement, which provides that "Tenant warrants and promises that Tenant will employ its best efforts to maximize its production consistent with the purpose of this Agreement and to provide maximum income in the best interests of Landlord." Hurricane contends that it would clearly maximize income to Bocage under the Lease Agreement for Hurricane to sell the dirt and clay to additional projects. Hurricane points to the beginning of Paragraph 11, regarding Use, as well, which provides that "[t]he property may only be used for business operations associated with the excavation, mining, processing, storing,

and moving of dirt, soils, and other materials." Hurricane suggests that language could have been added to the Lease Agreement limiting the use of the clay and dirt, but was not.[6]

Additionally, Hurricane refers to the last sentence of Paragraph 4, Compensation, which states that "Tenant shall disclose to Landlord the name and address of each party to whom Tenant sells any of the dirt, soils, and materials remove[d] from the Property." Hurricane maintains that this clause would be completely unnecessary if the Lease Agreement was limited to only the construction of the West Shore Lake Pontchartrain project and, instead, envisions multiple buyers not known at the time of the signing. Hurricane avers that all of these provisions must be given effect, and considering the document as a whole, it argues that the clear and unambiguous language of the Lease Agreement established the intent of the parties that the sale of the dirt and clay was not limited to the West Shore Lake Pontchartrain project.

To the contrary, Bocage originally argued at the trial court that the paragraph limiting the sale of clay and dirt to the West Shore Lake Pontchartrain project clearly establishes the parties' intent. Bocage further asserted that none of the other paragraphs in the Lease Agreement are inconsistent with Paragraph 2, as those paragraphs simply limit the Lease Agreement to the West Shore Lake Pontchartrain project. Following the trial court's decision, Bocage now argues on appeal that the trial court correctly found ambiguity in the Lease Agreement, permitting it to look at extrinsic evidence for the parties' intent, with the alternative argument that the Lease Agreement was clear and unambiguous.

After a thorough review of the Lease Agreement and application of the rules of contract interpretation, we find the Lease Agreement is unclear and susceptible to more than one reasonable interpretation as to whether it is limited to the West Shore Lake Pontchartrain project. Therefore, it is necessary to resort to the parties' intent and understanding outside of the four corners of the agreement.

---

[6] We note that Hurricane drafted the original agreement, and Bocage incorporated some revisions, to which Hurricane agreed.

7

Although summary judgment is rarely appropriate for a determination based on subjective facts such as intent, motive, malice, knowledge or good faith, a trial court may grant summary judgment based on an intent issue when there is no genuine issue of material fact concerning the pertinent intent. **Cypress Heights Academy**, 343 So.3d at 745. However, the law is well settled that a trial court cannot make credibility determinations, evaluate testimony, or weigh conflicting evidence in making its decision whether to grant or deny a motion for summary judgment. **Id.**

Our careful *de novo* review of the record on summary judgment supports the trial court's determination that there was no genuine issue of material fact that both parties intended to limit the sale of dirt and clay by Bocage to Hurricane to the West Shore Lake Pontchartrain project.

Bocage contends that throughout the negotiations and preparation of the Lease Agreement, the parties understood and agreed that the Lease Agreement was limited to the mining of clay and dirt for the construction of the West Shore Lake Pontchartrain project. In support of this contention, Bocage offered Mr. Rundell's affidavit. Mr. Rundell attested that at all times it was understood and agreed that the Lease Agreement was limited to mining of clay and dirt for construction of the West Shore Lake Pontchartrain project. He further stated that as the manager of Bocage, he had personal knowledge that on February 16, 2022, John "Art" Singleton, Jr., counsel for Hurricane, sent an email to Bocage through its counsel stating that "[p]er the terms of the Lease Agreement, the clay on the property is to be used for construction of the West Shore Lake Pontchartrain project." The email was attached to Mr. Rundell's affidavit.[7] The email further provided that Hurricane had an immediate opportunity to utilize the clay and dirt on other levee enhancement projects separate and apart from the West Shore Lake Pontchartrain project, and Hurricane sought permission from Bocage to mine clay from the Bocage property for the other projects, "subject to all other terms and conditions as contained in the Lease Agreement."

---

[7] This email was also attached as an exhibit to Jack Singleton's affidavit, submitted by Hurricane in opposition to Bocage's motion for summary judgment.

Mr. Rundell also attested that Claude Klein, on behalf of Hurricane, left him a voicemail message the same day as receipt of Art Singleton's email, seeking consent for Hurricane to sell clay from the Bocage property for other levee projects and acknowledging that the Lease Agreement only allowed the sale of the clay for the West Shore Lake Pontchartrain project. Mr. Rundell stated that later that morning, Mr. Klein texted him regarding the permission requested in the earlier voicemail, to which Mr. Rundell responded in the negative.

The documents offered by Bocage in support of its motion for summary judgment established the parties' intent to limit the sale of the dirt and clay from the Bocage property to the construction of the West Shore Lake Pontchartrain project. Thus, Bocage carried its initial burden on its motion for summary judgment. Having so determined, the burden shifted to Hurricane to produce factual support sufficient to establish the existence of a genuine issue of material fact or that Bocage was not entitled to judgment as a matter of law. See LSA-C.C.P. art. 966(D)(1).

In opposition to Bocage's motion for summary judgment, Hurricane offered the affidavit of Jack Singleton, Hurricane's owner and manager, wherein he attested that there was no discussion or agreement during the negotiation and execution of the Lease Agreement between Hurricane and Bocage that the lease would be limited to the West Shore Lake Pontchartrain project.[8] Jack Singleton stated that limiting the lease to supplying clay to the West Shore Lake Pontchartrain project was not a condition that Hurricane would ever have accepted in the lease. Thirty-five exhibits were attached to Jack Singleton's affidavit, consisting of copies of authentic business records of Hurricane primarily made up of communications reflecting the business dealings between Hurricane and Bocage during the period at issue. However, Jack Singleton's affidavit is inconsistent with the February 16, 2022 email sent by Art Singleton, Hurricane's counsel, acknowledging that the Lease Agreement was limited to the West Shore Lake Pontchartrain project and asking permission to use the clay and dirt from the Bocage

---

[8] In support of its own motion for summary judgment, Hurricane offered an earlier affidavit by Jack Singleton, which did not make any mention of the parties' intent in the Lease Agreement, together with the Petition for Declaratory Judgment and the Lease Agreement. In opposition to Hurricane's motion for summary judgment, Bocage offered the same evidence it offered in support of its own motion, with the addition of a project fact sheet.

property for another project. Likewise, a certified letter, dated February 23, 2022, sent to Bocage by Art Singleton, asked whether Bocage was agreeable to Hurricane utilizing and selling the clay and dirt from the Bocage property to service other levee improvement projects, and further provided, if Bocage declined, Hurricane would look elsewhere for its clay needs to service other levee projects.[9] Thus, Hurricane's own exhibits, which were attached to Jack Singleton's affidavit, clearly support Bocage's position.

Additionally, Jack Singleton's affidavit, signed on May 26, 2023, is well after the earlier February 16, 2022 email and the February 23, 2022 certified letter, both sent by the attorney for Hurricane, wherein Hurricane requested permission to sell the clay and dirt to other projects. Jack Singleton did not offer any explanation for this apparent inconsistency, and we find that his subsequent self-serving affidavit was not sufficient evidence to create a genuine issue of material fact precluding summary judgment.

Therefore, we find that the evidence offered in support of and in opposition to Bocage's motion for summary judgment established both parties' mutual understanding and clear intent to limit the mining and sale of the dirt and clay by Hurricane from the Bocage property to the West Shore Lake Pontchartrain project only. Hurricane failed to present sufficient evidence creating a genuine issue of material fact that the parties intended to sell the clay and dirt for other projects. Accordingly, we can find no merit to Hurricane's assignments of error, and Bocage was entitled to summary judgment as a matter of law, declaring that the Lease agreement was limited to the West Shore Lake Pontchartrain project.[10]

---

[9] The pertinent portion of the letter provided:

> Also, please be advised that Hurricane Work has an immediate need for clay to service other levee improvement project(s) separate and apart from the West Shore Lake Pontchartrain project. Please confirm within five (5) days from the receipt of this letter whether you are agreeable to Hurricane Work utilizing and selling clay from the Bocage property to service these other levee improvement projects, subject to all other terms and conditions as contained in the Lease Agreement.
> ... [I]f you fail to respond within five (5) days from the receipt of this letter, then Hurricane Work will consider your failure to respond as a negative response. In this event, Hurricane Work will look elsewhere for its clay needs to service these other levee improvement project(s).

[10] As Bocage established that it was entitled to summary judgment as a matter of law, declaring that the Lease Agreement was limited to the mining and sale of clay and dirt from the Bocage property exclusively for sale and use on the West Shore Lake Pontchartrain project and for no other levee projects, the trial court's denial of Hurricane's motion for summary judgment was proper, as was the dismissal of Hurricane's reconventional demand.

## CONCLUSION

For the foregoing reasons, the August 9, 2023 judgment of the trial court is affirmed. All costs of this appeal are assessed to Hurricane Works, LLC.

**AFFIRMED.**

11